1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KAREN HAUGEN, P.L., a minor
child, and MAY LANSDEN,

        Plaintiffs,

        v.

MOLLY FIELDS, CITY OF
UNION GAP, LARRY WORDEN,
ROBERT ALMEIDA, SHAWN
JAMES, ED LEVESQUE, L.
McKINLEY, H. RIVERA, CHASE
KELLOGG, and JOHN DOES one
through five,

        Defendants.

NO.  CV-05-3109-RHW

**ORDER ADDRESSING
PENDING MOTIONS**

Before the Court are Plaintiffs' Motion for Partial Summary Judgment Against Defendant Fields on Claim for Violation of Procedural Due Process (Ct. Rec. 25); Defendant's Cross-Motion for Partial Summary Judgment (Ct. Rec. 47); and Plaintiffs' Cross-Motion for Partial Summary Judgment Against Defendant Fields on Their Substantive Claims (Ct. Rec. 54).  On November 16, 2006, a telephonic hearing was held on the motions.  Plaintiffs were represented by James Lobsenz.  Defendants were represented by Wendy Lux, John McIlhenny, and Kirk Ehlis.  On November 20, 2006, the Court entered an order requesting that the parties file additional briefing on the issue of absolute immunity.

## BACKGROUND

Plaintiffs bring this § 1983 action and a state claim for malicious prosecution against police officers of the City of Union Gap, and Defendant Molly Fields, a

**ORDER ADDRESSING PENDING MOTIONS ~ 1**

social worker employed by Child Protective Services (CPS).  At issue for purposes of the pending motions is the obtaining of a court order by Defendant Fields that authorized the seizure of Plaintiff Karen Haugen's five-year old child, P.L., and the execution of the order, which resulted in P.L. being taken from his home for 72 hours.

On March 26, 2006, Defendant Fields filed a Dependency Petition in Yakima County Juvenile Court.  Prior to the filing of the Petition, CPS and the Union Gap Police Department had two incidents involving Tracy Lansden,[1] father of Plaintiff P.L and Haugen, both of which concerned P.L.

The first occurred on June 6, 2003, when P.L. was found "walking in traffic in the 2000 block on 18th Street clad in his pajamas," at 5:10 a.m.  A police officer returned the child to the Lansden/Haugen home, located at 1901 Lilac Lane, Union Gap, Washington.  According to the officer, it took ten minutes of knocking on the door to awaken Haugen.  She did not know that P.L. had left the house.  The officers were concerned because Haugen did not seem too worried that her son had been missing.  Subsequently, the Union Gap Police Department made a referral to CPS.

On June 16, 2003, CPS worker Roger Craig went to the Lansden/Haugen home to follow up on the incident.  Craig spoke with Haugen and saw that P.L. appeared "clean and healthy."  Craig warned the parents "that if the incident happened again the child could be removed" from their home.  Craig was ordered off the property.  Ultimately, Craig concluded that the overall risk to P.L. was low, and concluded that the allegations of negligent treatment against Lansden and Haugen were both "unfounded."

---

[1]Initially Tracy Landsen was named as a Plaintiff.  On September 11, 2006, the Court dismissed the claims of Lansden pursuant to the stipulation of the parties because Lansden had filed for bankruptcy and failed to list this pending lawsuit in the bankruptcy petitions (Ct. Rec. 58).

**ORDER ADDRESSING PENDING MOTIONS** ~ 2

The second incident occurred nine months later, on March 10, 2004. The Union Gap Police Department received a call that a child was seen running down Lilac Lane wearing just a diaper. The caller expressed fear that the child was going to get hit by a car in the street. Two officers were dispatched and they saw P.L running down the street, wearing just a diaper, apparently heading toward 1901 Lilac Lane. Landsen met the officers outside the house and, upon questioning, stated that his child was not the one running outside.[2] The officers saw a small child looking out the window of 1901 Lilac Lane that matched the description of the child. The officers had the person who made the initial call identify the child as the same one who was running down the street. The officers contacted a neighbor who stated that "she sees [P.L.] outside by himself all the time" and that "they are always trying to catch him."

On March 17, 2004, Fields placed a telephone call to the Lansden/Haugen home around 11:30 a.m. Fields spoke with Lansden and explained that she had a referral regarding the March 10 incident and she needed to see P.L. Lansden refused to allow Fields to see P.L. Fields informed Lansden that if he refused to allow her to see P.L., she would seek police assistance. Later that day, Fields and another CPS worker, Guzman, went to Plaintiffs' home to discuss the March 10, 2004, incident. They were accompanied by three officers from the Union Gap Police Department. Landsen became angry, shouted profanities, and refused to allow them to enter his home or to see his son. He demanded that the social workers and officers leave his property, which they did without seeing P.L.

On the same day, Fields consulted with her supervisor who suggested that she write a letter to the parents. Defendant Fields then wrote two letters; one to

---

[2]According to the officer's deposition, Lansden gave them a short tour of his house to prove that his son could not escape from the house.

**ORDER ADDRESSING PENDING MOTIONS ~ 3**

1 | Lansden and one to Haugen.[3]  There is no dispute that Plaintiff received the letters.

2 | Neither Lansden or Haugen contacted Fields.

3 |       On March 25, 2004, Fields contacted the person who reported seeing P.L. on

4 | the street on March 7, 2004.  That person stated that she had never seen the child in

5 | the street before that date, and she told Fields that she had seen the child "in the

6 | yard with his mother."

7 |       On March 26, 2004, Fields filed a Dependency Petition in Yakima County

8 | Juvenile Court.  The petition alleged that P.L. was "abused or neglected" and that

9 | P.L. "has no parent, guardian or custodian capable of adequately caring for the

10 | child, such that the child is in circumstances which constitute a danger of

11 | substantial damage to the child's psychological or physical development." (Ct.

12 | Rec. 51, Ex. P).  The Dependency Petition stated that a Child Protective Team

13 | staffing was held[4] and it recommended that the child be removed from the home

14 | due to high risk safety concerns and the father's refusal to recognize a problem

15 | exists and his refusal to meet with the department.  *Id.*  Concern was also expressed

16 | that there may be an increased risk to the child due to the child being the reason for

17 | CPS and Union Gap Police Department arriving at the home.  *Id.*  The Petition

18 | stated that "the Department is required by law to see the child and is asking the

19 | Court to order the parents to make the child available and to comply with services

20 | to help prevent future risk to the child.  It has not yet been determined if the child

21 |

---

22 |      [3]The letters stated:

23 | The Division of Children and Family Services received a referral regarding your
24 | son, [P.L.].  I am the social worker that has been assigned to this referral.  As part
     | of my responsibility as the assigned social worker, I am required to see your child
25 | in person, before I am able to close your case.

26 | I would like to meet with you and your child next week at my office located at
     | 1002 North 16th Avenue.  Please call me at [] to schedule an appointment between
27 | 8:00 a.m. and 4:00 p.m. that would be convenient for you.  Thank you.

     | (Ct. Rec. 51, Exs. M,N)

28 |      [4]This staffing was held on March 25, 2006.

**ORDER ADDRESSING PENDING MOTIONS ~ 4**

1   needs to be removed from the home to achieve these goals." *Id.*

2        On that same day, a written Notice of Shelter Care Hearing was issued by

3   the Yakima County Juvenile Court. (Ct. Rec. 51, Ex. Q). The Notice stated that a

4   hearing would be held on Tuesday, March 30, 2004, at 9:00 a.m. This written

5   notice was not served on Plaintiff Haugen prior to the hearing.

6        On March 29, 2006, Fields made three phone calls to the Lansden/Haugen

7   home and left messages on the answering machine each time. After the first

8   message, Landsen called back and left a message stating that the message Fields

9   left was unclear, and that DSHS should contact his attorney Robert Garrison.

10  Fields stated that she called the Lansden home again later that afternoon and left

11  another message for Landsen, and then left another message for Karen Haugen.

12       A hearing was held on March 30, 2004, before Court Commissioner Robert

13  Inouye in Yakima Juvenile Court (Ct. Rec. 51, Ex. S). Neither Lansden or Haugen

14  appeared.[5] The court asked what efforts were made to give notice to the parents.

15  Fields reported that she made three phone calls to their home "yesterday"[6] and left

16  voice messages on the answering machine. *Id.* The court asked if she left the

17  place, date, and the time of the hearing, to which she answered "yes." *Id.* The

18  court then asked if she gave enough information so they knew it had to do with

19  P.L., and Fields answered, "yes." *Id.* The court asked if Fields conveyed to them

20  that one of the issues might be whether P.L. could be removed from their care, and

21  she responded, "No, I don't think I specifically referred to that in the message." *Id.*

22  Upon inquiry, Fields stated that, "I told them that in response to his request to us to

23  get a court order to see [P.L.] that we were now in the process of getting a court

24  order and a hearing was going to be held." *Id.* At some point in the hearing, the

25  court's staff attempted to call Lansden and Haugen. There was no answer and no

26  ────────────

27       [5]Lansden had a hearing scheduled with the Board of Industrial Insurance
    Appeals (BIIA). Haugen stayed home with P.L., because she did not have a car.

28       [6]March 29, 2004.

**ORDER ADDRESSING PENDING MOTIONS ~ 5**

answering machine picked up.  *Id.*  Fields stated that she was not sure whether the phone number was the same one that she called the previous day, but that it was the one that was available in the computer, which she would have referred to when she had previously called Lansden and Haugen.  *Id.*

The state sought two orders from the court.  The first was an order to produce P.L. or show cause; the second was an order to take the child into custody so they could enlist the assistance of law enforcement.  Both orders were signed in the event the pick-up order could not be executed because the parents hid the child somewhere.  *Id.*

Later that day, Fields enlisted the help of the Union Gap Police Department to execute the court order.  When the officers arrived at the 1901 Lilac Lane residence, they saw Lansden leave with P.L. and walk westbound on Lakeata Street.  The officers attempted to contact them, but were too far behind Lansden and P.L.  They saw the two enter a residence at 1814 Lakeata Street.  This residence belonged to Plaintiff May Lansden, who is the grandmother of Tracy Lansden and the great-grandmother of P.L.  She was 93 years old at the time.

The officers entered the house and attempted to seize P.L. from Haugen's arms.  A struggled ensued and pepper spray was used by the officers.  Eventually, Officer Worden was able to take P.L. out of the house.  Once outside, he motioned to Fields to approach.[7]  Fields took P.L. from Officer Worden, carried him to her car, and put him in a car seat in the back.  She transported P.L. to the Department of Social and Health Services (DSHS) office and P.L. was transferred to a foster family.  Defendant Field instructed the foster mother to take P.L. to the doctor the next day.  P.L. was examined by a physician on April 1, 2004.

On the morning of May 31, 2004, Haugen met with Fields and Social Worker Patty Nagle at the DSHS office.  It was at this meeting that Haugen was

---

[7]Fields had not participated in the initial seizure; instead she remained in her car.

**ORDER ADDRESSING PENDING MOTIONS ~ 6**

served with the Notice and Summons of Dependency, Dependency Petition, and accompanying paperwork. Fields and Nagle also met with Lansden at the Union Gap jail. He was also served with the Notice and Summons of Dependency, Dependency Petition, and accompanying paperwork at this time.

A sheltered care hearing was held on April 2, 2004. The parents were present and represented by counsel. Fields returned P.L. to his parents following the hearing. On August 9, 2004, the court granted DSHS's Motion for Voluntary Dismissal of the Dependency Petition.

### DISCUSSION

In *Wallis v. Spencer*, Judge Reinhardt identified a reoccurring theme in § 1983 cases involving CPS and parents in that the cases usually involve "a conflict between the legitimate role of the state in protecting children from abusive parents, and the rights of children and parents to be free from arbitrary and undue government interference." 202 F.3d 1126, 1130 (9th Cir. 2002). This statement is an accurate description of the case at bar. In this case, the evidence of abuse was two separate incidences occurring over a nine-month period where a young boy was seen running in the street, and the parents' refusal to let the CPS caseworkers see the child, all of which culminated in the state removing the young boy from his home for 72 hours.

**A.    Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*,

**ORDER ADDRESSING PENDING MOTIONS ~ 7**

1  477 U.S. 317, 325 (1986).  If the moving party meets it initial burden, the non-

2  moving party must go beyond the pleadings and "set forth specific facts showing

3  that there is a genuine issue for trial.  *Id.* at 325; *Anderson*, 477 U.S. at 248.

4      In addition to showing that there are no questions of material fact, the

5  moving party must also show that it is entitled to judgment as a matter of law.

6  *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000).

7  The moving party is entitled to judgment as a matter of law when the non-moving

8  party fails to make a sufficient showing on an essential element of a claim on

9  which the non-moving party has the burden of proof.  *Celotex*, 477 U.S. at 323.

10     When considering a motion for summary judgment, a court may neither

11 weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

12 is to be believed, and all justifiable inferences are to be drawn in his favor."

13 *Anderson*, 477 U.S. at 255.

14 **B.    Absolute Immunity**

15     At the heart of the parties' motions for summary judgment is whether

16 Defendant Molly Fields is entitled to absolute immunity to shield her from the

17 claims brought against her by Plaintiffs.

18     Section 1983 creates a cause of action against any person who, acting under

19 color of state law, violates the constitutional rights of another person.  42 U.S.C. §

20 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101,

21 1106 (9th Cir. 2001).  To succeed on a section 1983 claim, Plaintiffs must show that

22 (1) the conduct complained of was committed by a person acting under color of

23 state law; and (2) the conduct deprived him or her of a constitutional right.  *Long v.*

24 *County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  A public official may

25 be immune from liability for acts performed in her official capacity under either the

26 doctrine of absolute immunity or qualified immunity. *Mabe*, 237 F.3d at 1106.

27 Generally, the "presumption is that qualified rather than absolute immunity is

28 sufficient to protect government officials in the exercise of their duties." *Antoine*

**ORDER ADDRESSING PENDING MOTIONS ~ 8**

1   *v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n.4 (1993).

2      Absolute immunity shields only those who perform a function that enjoyed

3 absolute immunity at common law in 1871, which is the date Congress codified

4 section 1983. *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc). The

5 burden is on the official claiming absolute immunity to identify the common-law

6 counterpart to the function that the official asserts is shielded by absolute

7 immunity. *Id.* The scope of absolute immunity for social workers is extremely

8 narrow, in that it only applies to discretionary, quasi-prosecutorial decisions to

9 institute court dependency proceedings to take custody away from the parents. *Id.*

10 To the extent that social workers make discretionary decisions and

11 recommendations that are not functionally similar to prosecutorial or judicial

12 decisions, such as deciding or making recommendations as to the particular home a

13 child is to go or the particular foster parents who are to provide care, only

14 qualified, not absolute immunity, is available. *Id.*

15      The Court concludes that providing notice of a temporary custody hearing is

16 part of the discretionary, quasi-prosecutorial decision to institute court dependency

17 proceedings. *See Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984)

18 (holding that defendant attorney general is absolutely immune from the claim for

19 damages based on the allegation that he wrongfully failed to notify plaintiff of the

20 revocation of the waiver of the medical-course requirement in an action for

21 damages based on revocation of a medical license); *Wilson v. Kelkhoff,* 86 F.3d

22 1438, 1443-45 (7th Cir. 1996) (holding that members of a prison review board were

23 absolutely protected from suit for their failure to provide the plaintiff sufficient

24 notice of the hearing and to allow the plaintiff to present evidence and witnesses);

25 *see also Coverdell v. Dep't of Soc. and Health Serv.*, 834 F.2d 758, 764 (9th Cir.

26 1987) (holding that social worker's actions in seeking and obtaining an *ex parte*

27 court order were within the scope of her statutory authority as a quasi-prosecutor

28 and she was entitled to absolute immunity from civil liability). Accordingly, while

**ORDER ADDRESSING PENDING MOTIONS ~ 9**

the Court disagrees with Defendant Fields' assertions that the notice provided was constitutionally adequate, Defendant Fields has absolute immunity that shields her from Plaintiffs' claim against her for violation of their procedural due process rights.

Additionally, Defendant Fields has absolute immunity against Plaintiffs' claims for retaliation and malicious prosecution. Plaintiff Haugen is alleging that Fields sought the court order authorizing the removal of her child from her home in retaliation for the parents refusing to let her see the child without a court order. Because the alleged retaliatory conduct was the seeking of the court order, and such conduct is within Defendant's quasi-prosecutorial role, absolute immunity protects Defendant from Plaintiffs' claim. Likewise, in *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001), the circuit held that absolute immunity protects a prosecutor from a malicious prosecution claim. *Id.* at 1008. The decision to bring a dependency petition is entitled to the same protections; thus, Defendant Fields is absolutely immune from a malicious prosecution claim.

Plaintiffs also allege that Defendant Fields violated their Fourteenth Amendment right to family integrity and association when she drove P.L. from the family home after the Union Gap police officers seized P.L. pursuant to the court order[8] and when she directed the foster mother to have P.L. examined by a physician.

While it is clear that Defendant Fields' role in the execution of the seizure order was not a quasi-prosecutorial function connected with the pursuit of the

---

[8]Defendant Fields asserts that she did not participate in the "seizure" of P.L. It is true that she did not get out of her car until she was motioned by one of the police officers to come and take P.L. from him. Even so, she did drive P.L. away from the scene and she placed him in foster care. By so doing, she was no longer acting in a quasi-prosecutorial manner, and she prevented P.L. from being returned to his parents.

**ORDER ADDRESSING PENDING MOTIONS ~ 10**

1   dependency proceedings, under *Cloverdell*, she is entitled to absolute immunity.  In

2   *Cloverdell*, the social worker removed a baby from the hospital shortly after she

3   was born and placed her in foster care, pursuant to an *ex parte* court order.  834

4   F.2d at 764.  The Circuit concluded that because the social worker's conduct was

5   plainly authorized by the court's order, the social worker enjoyed absolute quasi-

6   judicial immunity for executing that order.  *Id.* at 764.

7          Defendant's role in the medical examination is a bit more problematic.  First,

8   Defendant Fields has never argued that she is entitled to absolute immunity for her

9   role in authorizing P.L. to be examined by a physician.  In her Response to

10  Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 49), Defendant argues

11  that she was entitled to qualified immunity for her role in instructing the foster

12  mother to take P.L. to the doctor.  Nor did Defendant assert that she was entitled to

13  absolute immunity with regard to the medical examination in the supplemental

14  briefing ordered by the Court.  *See Paine v. City of Lompoc*, 265 F.3d 975, 981 n.1

15  (9th Cir. 2001) (recognizing that because the two defenses are distinct, raising the

16  qualified immunity defense does not suffice to invoke absolute immunity as well).

17         Second, the court order issued by the juvenile court did not explicitly order

18  that P.L. should be examined.  Instead, the order stated that:

19         3.2    The supervising agency *may* authorize evaluations of the child's
                  physical or emotional condition, routine medical and dental
20                examination and care, and all necessary emergency care.
    (Ct. Rec. Ct. Rec. 51, Ex. U) (emphasis added).
21
22         Thus, the decision whether to have P.L. examined was left to the discretion

23  of the agency.  *See Doe v. Lebbos,* 348 F.3d 820, 828 (9th Cir. 2003) (holding that

24  the decision to refer a minor for a physical examination without parental consent or

25  a court order is reviewed under qualified immunity); *see also Miller*, 335 F.3d at

26  898 (citations omitted) (holding that individually-named state defendants who

27  make discretionary decisions are entitled to qualified immunity).  Also, the court

28  order does not explicitly authorize the supervising agency to subject a child to a

    medical examination without notice to the parents.  The Court concludes that

**ORDER ADDRESSING PENDING MOTIONS ~ 11**

1   Defendant Fields is not entitled to absolute immunity because she exercised her

2   discretion in instructing the foster mother to have P.L. examined.  Moreover, the

3   Court concludes that even if Defendant was entitled to absolute immunity with

4   regard to her decision to have P.L. examined, she waived her right by failing to

5   plead it in the answer or in her summary judgment pleadings.

6        In determining whether Defendant is entitled to qualified immunity, the

7   Court must first determine whether Plaintiffs have stated a *prima facie* claim that

8   Defendant Fields violated one of their constitutional rights.  *Saucier v. Katz*, 533

9   U.S. 194, 198 (2001); *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006).  "If no

10  constitutional right would have been violated were the allegations established,

11  there is no necessity for further inquiries concerning qualified immunity."  *Id.*

12       If the Court determines that Plaintiffs presented a *prima facie* case, it must

13  ascertain "whether that right was 'clearly established' such that 'it would be clear

14  to a reasonable officer that his conduct was unlawful in the situation he

15  confronted.'" *Brittain*, 451 F.3d at 988 (*quoting Menotti v. City of Seattle*, 409 F.3d

16  1113, 1152 (9th Cir. 2005).  "[W]hether an official protected by qualified immunity

17  may be held personally liable for an allegedly unlawful official action generally

18  turns on the 'objective legal reasonableness' of the action, assessed in light of the

19  legal rules that were 'clearly established' at the time it was taken." *Anderson v.

20  Creighton*, 483 U.S. 635, 639 (1987).  An official's claim of qualified immunity

21  will be defeated if, "in the light of pre-existing law" the unlawfulness of his

22  conduct was "apparent." *Grossman v. City of Portland*, 33 F.3d 1200, 1208 (9th

23  Cir. 1994) *citing Anderson*, 483 U.S. at 640.

24       In determining immunity, the Court must accept Plaintiffs' allegations as

25  true. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993).  The official seeking

26  immunity bears the burden of demonstrating that immunity attaches to a particular

27  function. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

28       In *Wallis v. Spencer*, the Circuit held that the "right to family association

**ORDER ADDRESSING PENDING MOTIONS ~ 12**

includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." 202 F.3d 1126, 1141 (9th Cir. 2000). In *Lebbos*, the Circuit recognized that:

> the "Constitution assures parents that, in the absence of parental consent, physical examinations of their children may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, *upon notice to the parents, and an opportunity to be heard*, that grounds for such an examination exist and that the administration of the procedure is reasonable under all circumstances."

348 F.3d at 828-29 (emphasis added).

There are two exceptions to the constitutional requirements of parental consent and court order: (1) a reasonable concern that material physical evidence might dissipate; and (2) some urgent medical problem exists requiring immediate attention. *Id.*

Here, in viewing the facts in the light most favorable to Plaintiffs, the Court concludes that there are genuine issues of material fact as to whether Plaintiffs' constitutional rights were violated when Defendant Fields instructed the foster mother to have P.L. examined, without notice to the parents.

Defendant Fields states that she authorized the medical examination because she was concerned that P.L. may have been exposed to pepper spray. If this were true, then she would be entitled to qualified immunity, because the presence of pepper spray would be an urgent medical problem that required immediate attention. Moreover, there is no direct evidence that Defendant Fields directed that the examination be for investigative purposes. If she did not so instruct, she would not have personal participation in any potential constitutional violation.

On the other hand, the record indicates that the examination was conducted on April 1, 2004, two days after P.L. was allegedly sprayed with pepper spray. The doctor's report noted bruises on P.L.'s knee, thigh, and shoulder and scars on his back and shoulder. This would indicate that the physical examination was more than a cursory examination to determine the effects of possible pepper spray.

**ORDER ADDRESSING PENDING MOTIONS ~ 13**

1    Moreover, Defendant Fields' records indicate that the examining physician had

2    concluded that there was no evidence of sexual abuse. This suggests that

3    Defendant Fields may have been interested in having P.L. examined for

4    investigative purposes.  Also, Defendant Fields was aware that the court order

5    giving her permission to have P.L. examined was not obtained upon adequate

6    notice to the parents regarding any potential examination, and that the court made

7    no specific ruling that grounds for such an examination exist or that the

8    administration of the procedure was reasonable under all circumstances.  *See*

9    *Grossman*, 33 F.3d at 1209 (noting that "individuals cannot always be held

10   immune for the results of their official conduct simply because they were enforcing

11   policies or orders promulgated by those with superior authority.").  Finally, the

12   record is clear that Defendant Fields made no effort to notify the parents prior to

13   having P.L. subjected to a physical examination.

14       Finally, the Court concludes that by 2002, it was clearly established that the

15   physical examinations of children may not be undertaken by the state for

16   investigative purposes unless parents have notice and an opportunity to be heard.

17       Because there are questions of fact regarding Defendant Field's role in

18   P.L's medical examination, Defendant Fields is not entitled to qualified immunity

19   regarding Plaintiff Haugen's claim that her Fourteenth Amendment right to family

20   integrity and association was violated and P.L.'s corresponding Fourth

21   Amendment claim.[9]

22

23

24       [9]*Lebbos*, 348 F.3d at 827 n.9 (holding that where the children were subject to

25   a seizure, their claims for unlawful seizure and removal from their parent's custody

26   should be assessed under the Fourth Amendment, but recognize that the same legal

27   standard applies in evaluating Fourth and Fourteenth Amendment claims); *see also*

28   *Wallis*,  202 F.3d at 1142 (recognizing that children have a corresponding right to

     the love, comfort, and reassurance of their parents while they are undergoing

     **ORDER ADDRESSING PENDING MOTIONS ~ 14**

**C.    Conclusion**

For the reasons stated above, the Court dismisses the following claims asserted against Defendant Molly Fields:  Plaintiffs' Fourteenth Amendment procedural due process claims for lack of notice to the parents; Plaintiffs' First Amendment retaliation claims; Plaintiffs' malicious prosecution claims; and Plaintiffs' Fourteenth and Fourth Amendment claims for execution of the search warrant and seizure of P.L.  The remaining claim asserted against Defendant Field that is set for trial is whether Plaintiff Haugen's Fourteenth Amendment right to family integrity and association, and P.L's corresponding Fourth Amendment right were violated when P.L. was subject to a medical examination.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' Motion for Partial Summary Judgment Against Fields on Claim for Violation of Procedural Due Process (Ct. Rec. 25) is **DENIED**.

2.    Defendant's Cross-Motion for Partial Summary Judgment (Ct. Rec. 47) is **GRANTED** in part, and **DENIED** in part.

3.    Plaintiffs' Cross-Motion for Partial Summary Judgment Against Fields on Their Substantive Claims (Ct. Rec. 54) is **GRANTED** in part, and **DENIED** in part.

///

///

///

///

///

---

medical procedures, including examinations–particularly those that are invasive or upsetting.

**ORDER ADDRESSING PENDING MOTIONS ~ 15**

1      **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

2    Order and forward copies to counsel.

3      **DATED** this 5th day of January, 2007.

4                            *s/ Robert H. Whaley*

5

6                        ROBERT H. WHALEY
                  Chief United States District Judge

7

8

9

10
     Q:\CIVIL\2005\Haugen Lansden\sj.ord.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER ADDRESSING PENDING MOTIONS ~ 16**