1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8
KAREN HAUGEN, P.L., a minor
9   child, and MAY LANSDEN,                    NO.  CV-05-3109-RHW

10            Plaintiffs,

11         v.                                  **ORDER DENYING PARTIES'
                                               MOTIONS FOR SUMMARY
12   MOLLY FIELDS, CITY OF                     JUDGMENT**
     UNION GAP, LARRY WORDEN,
13   ROBERT ALMEIDA, SHAWN
     JAMES, ED LEVESQUE, L.
14   McKINLEY, H. RIVERA, CHASE
     KELLOGG, and JOHN DOES one
15   through five,

16            Defendants.

17
         Before the Court is Plaintiff's May Lansden's Motion for Partial Summary

18   Judgment (Ct. Rec. 114) and Defendants' Motion for Summary Judgment (Ct. Rec.

19   128).  A hearing was held on the motions on May 15, 2007, in Yakima,

20   Washington.  Plaintiffs were represented by James Lobsenz, who participated

21   telephonically.  Defendants were represented by Kirk Ehlis.

22                          **FACTUAL BACKGROUND**

23       The two motions before the Court deal exclusively with the execution of the

24   pickup order by the Union Gap police officers that took place on March 30, 2004.

25   The pickup order was signed by the Yakima County Juvenile Court and authorized

26   the officers to take a three-year old child into custody.  The parties present two

27   significantly different versions of the manner in which the officers executed the

28

**ORDER DENYING PARTIES' MOTIONS FOR
SUMMARY JUDGMENT ~ 1**

1    order.

2         Defendants' version of facts can be summarized as follows:

3         The officers went to the child's residence and saw the father leave the
4    residence and walk toward a residence that the officers knew to be the father's
5    grandmother's house.  The father was carrying the child who was the object of the
6    pickup order.  The officers called out to him and he responded in a casual manner.
7    The officers watched as the father entered his grandmother's residence.  The
8    officers also saw the mother approach the grandmother's house.  The officers
9    attempted to serve a copy of the pickup order on the mother, but the mother refused
10   to take the order and told the officers they were not getting the child.  The officers
11   watched the mother enter the grandmother's house.  They also saw the father and
12   the child enter the house.

13        When the officers approached the front door of the house, the father met
14   them outside on the porch.  One of the officers tried to serve the court papers on
15   the father.  The father pushed the officer in the chest with an open hand and then
16   tried to close the door.  The officer grabbed the door to prevent it from being
17   closed and bear-hugged the father.  The momentum took them inside the house,
18   where the father was arrested.  At the same time, another officer shouted out a
19   warning that he was going to deploy pepper spray and then sprayed the pepper
20   spray in the vicinity of the officer and father.  After the father was arrested and
21   taken outside, the officer who was pushed saw the mother walk away with the
22   child.  He followed the mother and ordered her to let go of the child.  She refused
23   and he struck her in the arm.  She was not sprayed with pepper spray.  Another
24   officer entered the house from the back door.  He saw the mother with the
25   telephone and thought she was going to strike the other officer with it, so he
26   pushed her from behind and shoved her against the counter.  Another officer
27   removed the child from the house.  The mother was arrested.  None of the officers
28   had their guns drawn.

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 2**

1    Plaintiffs' version of the facts can be summarized as follows:

2    The mother saw the officers outside the residence and told them they were

3    not going to take her child.  The mother came into the residence and told the father,

4    "They are here."  The father did not know who the "they" were, so he went to the

5    door.  As he started opening the solid door, the police officers pushed the door

6    open, came storming into the house, tackled him, and sprayed pepper spray.  They

7    never announced their presence and never attempted to serve the court order.  They

8    never said anything to the father.  The officers arrested him and took him out of the

9    house.  There was no warning that pepper spray was going to be deployed.

10    One of the officers sprayed the mother directly in the face with pepper spray.

11    There was no warning before she was sprayed.  She grabbed her child and placed

12    him behind her.  The officers told her twice to let go of her child, but the child was

13    scared and she was trying to protect him.  The officer struck her with a closed fist

14    about three or four times on the forearm.  The mother attempted to dial 911, but

15    she could not see the numbers.  An officer grabbed her by the hair and slammed

16    her down on the counter and placed her under arrest.  The grandmother was also

17    sprayed with pepper spray.  She was not warned that pepper spray was going to be

18    deployed.  An officer had his gun drawn.

19    Plaintiff May Lansden is the 91-year old grandmother.  She asserts that her

20    Fourth Amendment rights were violated when the officers entered her house

21    without a search warrant and excessive force was used.  The mother is Plaintiff

22    Karen Haugen.  She asserts that the officers used excessive force in arresting her.

23    The child is P.L.  He asserts that the officers used excessive force in executing the

24    court pickup order.  The officers deny that they violated Plaintiffs' constitutional

25    rights.

26    ///

27    ///

28    ///

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 3**

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B.    Section 1983 Claims**

Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. 42 U.S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To succeed on a section 1983 claim, Plaintiffs must show that

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 4**

(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him or her of a constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A public official may be immune from liability for acts performed in his official capacity under either the doctrine of absolute immunity or qualified immunity. *Mabe*, 237 F.3d at 1106. Generally, the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 409, 433 n.4 (1993).

In determining whether Defendants are entitled to qualified immunity, the Court must first determine whether Plaintiffs have stated a *prima facie* claim that Defendants violated one of their constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 198 (2001); *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

If the Court determines that Plaintiffs presented a *prima facie* case, it must ascertain "whether that right was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brittain*, 451 F.3d at 988 (*quoting Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005). "This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case." *Id.* (*quoting San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005)).

## C.    Absolute Immunity

Defendants argue that they should receive absolute immunity for their conduct in executing the search warrant. With regard to P.L.'s claims that he was unlawfully seized, the Court agrees. However, Defendants are not entitled to receive absolute immunity for the conduct in *executing* the search warrant. *See San Jose Charter of the Hells Angels Motorcycle Club*, 402 F.3d at 971 (analyzing

**ORDER DENYING PARTIES' MOTIONS FOR SUMMARY JUDGMENT ~ 5**

whether officers were entitled to qualified immunity for unreasonable execution of a search warrant); *Motley v. Parks*, 383 F.3d 1058 (9th Cir. 2004) (analyzing whether officers were entitled to qualified immunity for warrantless search of apartment and excessive use of force claim).

**D.    Plaintiff May Lansden's Claims**

Plaintiff May Lansden asserts the following claims: violation of the Fourth Amendment in entering her house without a search warrant and failing to knock and announce before the police entered her house; tort claim for invasion of privacy; and excessive use of force claim.

(1)    Entering House Without Search Warrant

Plaintiff May Lansden argues that the officers violated her Fourth Amendment rights when they entered her home without a search warrant.  Plaintiff analogizes a court pickup order with an arrest warrant and argues that summary judgment in her favor is appropriate under *Steagald v. United States*, 451 U.S. 204, 211 (1981).

The starting point of whether the Fourth Amendment has been violated is the premise that entry into a home to conduct a search or to make an arrest is unreasonable under the Fourth Amendment unless it is done pursuant to a warrant. *Id*. at 211.  An officer acting pursuant to a felony arrest warrant may, consistent with the Constitution, enter a *suspect's residence* to arrest the suspect when there is reason to believe that the suspect is presently in the residence.  *Payton v. New York*, 445 U.S. 573, 602-03 (1980).  The  police, however, cannot enter a third-party's residence to execute an arrest warrant, absent consent or exigent circumstances.  *Steagald*, 451 U.S. at 216.

In *Steagald*, the Supreme Court addressed the issue of whether an arrest warrant can be executed in a third-party residence by asking whether there is adequate protection for the Fourth Amendment interests of persons not named in the warrant, where their homes are searched without their consent and in the

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 6**

absence of exigent circumstances. *Id.* at 212.  The Supreme Court held that an arrest warrant does not provide adequate protection; therefore, an arrest warrant does not permit officers to enter a third-party's residence, absent consent or exigent circumstances. *Id.*; *see also Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 930 (9th Cir. 2001) ("[A]n arrest warrant does not justify entry into a third person's home.").

In doing so, the Supreme Court relied on the fact that the Fourth Amendment was intended partly to protect against the abuses of the general warrants that had occurred in England and the writs of assistance used in the colonies. *Id.* at 220.  This type of warrant specified only an offense–typically seditious libel–and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched.  *Id.* Likewise, the writs of assistance used in the colonies noted only the object of the search–any uncustomed goods, which left customs officials completely free to search any place where they believed such goods might be found.  *Id.*  The objection to these types of warrants was that they provided no judicial check on the determination of the executing officials that the evidence available justified an intrusion into any particular home.  *Id.*  The Supreme Court likened an arrest warrant, which specifies only the object of the search and leaves to the unfettered discretion of the police the decision as to which particular homes should be searched, to a writ of assistance, and held that the framers of the Fourth Amendment would not have condoned such a result.  *Id.*  Absent the requirement of a specific search warrant to search the residence of a third-party, "the police could search all the homes of that individual's friends and acquaintances," which the Court found fraught with the potential for abuse.  *Id.* at 215.

Defendants argue that *Steagald* does not apply to court pickup orders. Defendants have not presented the Court with any case law in support of this argument.  Instead, Defendants take the position that a police officer, armed with a

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 7**

court pickup order, can enter any residence to execute the order, as long as the police officers know that the object of the pickup order is located at that residence.

The Court acknowledges that a court pickup order, with the corresponding finding of imminent harm by a court, has additional characteristics not found in an arrest warrant. Nevertheless, the fact of the matter is that a court pickup order is a general warrant, which provides no protections to the owner of the third-party residence. The Court finds that *Steagald* applies to court pickup orders. This does not end the inquiry, however, because under *Steagald*, the officers can enter a third-party residence to execute a court pickup order if consent or exigent circumstances exists.

Exigent circumstances are defined as "those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. George*, 883 F.2 1407, 1412 (9th Cir. 1989) (citations omitted). The measure of exigency of the circumstances is not defined by what might have happened in the interim period, but is based on the totality of the circumstances, viewed at the moment the police decided to enter the third-party's home. *Id.*

Factors the Court considers in determining whether exigent circumstances exist are: the gravity of the underlying offense; whether delay poses a threat to police or the public safety; or whether there is a *great* likelihood that evidence will be destroyed if there is a delay until a warrant can be obtained. *United States v. Curzi*, 867 F.2d 36, 42 (1st Cir. 1989) (emphasis in original). A court's finding of imminent harm is another factor that should be considered in determining whether circumstances exist.

Under this framework, an argument could be made that a court's finding of imminent harm creates *per se* exigent circumstances, and this would support

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 8**

1  Defendants' position that they can enter a third-party residence to execute a court

2  pickup order, without an additional search warrant.  While intriguing, the Court

3  rejects this argument.  The Court can conceive of situations where such a *per se*

4  rule would be ill-advised.  For instance, in this case, the cause for finding the

5  imminent harm was because P.L. was found running unattended in the streets on

6  two separate occasions.  There was nothing in the record to suggest that Tracy

7  Lansden or Karen Haugen abused or neglected P.L., beyond the failure to

8  supervise him while he was running in the streets.  Defendant Molly Fields

9  participated in the hearing and knew the basis for the finding of imminent harm.  If

10 Defendant Molly Field executed the court order, she would have known that there

11 was no actual exigent circumstances of imminent harm, because P.L. was not

12 found running in the streets.  Instead, P.L. was inside a house.  In that case, the

13 exigent circumstances would not exist to support a warrantless entry, which would

14 be allowed if a *per se* exigent circumstance rule was imposed.  In this case, there is

15 evidence that the police officers were aware of the basis for the pickup order.

16     While a court's finding of imminent harm is important and normally would

17 weigh heavily in favor of finding exigent circumstances, the Court declines to

18 impose a *per se* rule.[1]  Instead, the finding of imminent harm by the juvenile court,

19 as well as what the officer's knew regarding the nature of the imminent harm are

20 factors the trier of fact considers in determining whether exigent circumstances did,

21 in fact, exist at the moment the police decided to enter May Lansden's home.

22     In this case, there are genuine issues of material fact regarding whether

23

24     [1]Similarly, the Ninth Circuit has rejected a *per se* exigent need for

25 warrantless entry in domestic abuse cases.  In these cases, the court must evaluate,

26 on a case-by-case basis, whether the "total circumstances, presented to the law

27 officer before a search . . . relieved the officer of the customary need for a prior

28 warrant."  *United States v. Brooks*, 367 F.3d 1128, 1136 (9th Cir. 2004).

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 9**

exigent circumstances did exist to permit the officers to enter May Lansden's house without a search warrant, and these questions are best resolved by a jury. Moreover, by 2004, it was well-established that police officers cannot enter a third-party residence to locate the object of an arrest warrant, absent exigent circumstances. Thus, summary judgment is not appropriate.

### (2)    Failure of Officers to Knock and Announce

"[I]n some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). The Fourth Amendment mandates that police officers entering a dwelling pursuant to a search warrant announce their purpose and authority and either wait a reasonable amount of time or be refused admittance before forcibly entering the residence. *Id*; *United States v. Chavez-Miranda*, 306 F.3d 973, 980 (9th Cir. 2002).

In this case, there are genuine issues of material fact regarding whether Defendants announced their identity prior to entry. Moreover, by 2004, it was well-established that the Fourth Amendment requires police officers to announce their purpose and authority. Thus, summary judgment is not appropriate.

### (3)    Hot Pursuit

Defendants assert that they were justified in entering May Lansden's home without a search warrant because they were in hot pursuit of Tracy Lansden, relying on *United States v. Santana*, 427 U.S. 38, 42 (1976), in support of their argument. In *Santana,* the Supreme Court held that a person standing in a doorway of her house was in a "public place" for purposes of the Fourth Amendment, since she was not in an area where she had any expectation of privacy, and was not merely visible to the public, but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. *Id.* The Supreme Court held that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Id.*

**ORDER DENYING PARTIES' MOTIONS FOR SUMMARY JUDGMENT ~ 10**

1    In *LaLonde v. County of Riverside*, the Ninth Circuit clarified the scope of
2    *Santana,* in holding that where the arrest took place only after the officers had
3    crossed the threshhold of the door and entered the apartment, the doorway
4    exception does not apply.  204 F.3d 947, 955 (9th Cir. 2000).  The *LaLonde* court
5    distinguished *Santana*, where the officers first arrested the suspect in a public
6    place, the doorway, and followed her into her home after she retreated, with the
7    facts in that case in which the officers arrested the plaintiff only after they were
8    inside his home.  *Id.* at 955.  The *LaLonde* court rejected the "hot pursuit" theory
9    because, in that case, the police were investigating a disturbing the peace
10   allegation, and there was nothing in the record to suggest that the plaintiff would
11   destroy or alter evidence.  *Id.*  The Ninth Circuit noted that an exigency related to a
12   misdemeanor will seldom, if ever, justify a warrantless entry into a house.  *Id.* at
13   956.

14       Here, there are questions of fact regarding where the officers initially
15   encountered Tracy Lansden and the conduct that led the police to enter the
16   residence.

17                  **(4)    Emergency Aid Exception**

18       In their reply, Defendants propose that the officer's conduct was justified by
19   the "emergency aid" exception to the Fourth Amendment.  Under the "emergency
20   aid" exception, police officers are permitted warrantless entry into a home as part
21   of their "community caretaking function."  *Martin v. City of Oceanside*, 360 F.3d
22   1078, 1082 (9th Cir. 2004).  Under this "emergency aid" exception, police officers
23   may "enter a home without a warrant to render emergency assistance to an injured
24   occupant or to protect an occupant from imminent injury."  *Brigham City, Utah v.*
25   *Stuart*, 126 S.Ct. 1943, 1947 (2006).  The "emergency aid" exception adopted by
26   the Ninth Circuit initially had three prongs, but the Supreme Court, in *Brigham*
27   *City,* rejected the subjective element of the test.  *Id.* at 1948.  The remaining two
28   prongs are: (1) The police must have reasonable grounds to believe that there is an

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 11**

emergency at hand and an immediate need for their assistance for the protection of life or property; and (2) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *Martin*, 360 F.3d at 1081-82.

The "objective reasonableness" test of the "emergency aid" doctrine is essentially the same as the one courts use to determine whether police action is justified under the "exigent circumstances" exception to the Fourth Amendment. *United States v. Black*, 482 F.3d 1035, 1041 n.1 (9th Cir. 2007).  Therefore, for the reasons stated above, questions of material fact exist to prevent Defendants from being granted summary judgment under the emergency aid exception.

### (5)   State Law Claim for Invasion of Privacy

In *Babcock v. State*, the Washington Supreme Court specifically held that the immunities of state officers do not shield the governmental agency that employees them from tort liability, even when liability is predicated upon respondeat superior.  116 Wash. 2d 596, 621 (1991).  In *Savage v. State*, the Washington Supreme Court held that personal qualified immunity of parole officers does not extend to the State.  127 Wash.2d 434, 446 (1996).

Thus, the City of Union Gap can be held liable under a theory of respondeat superior for the actions of their employees.  For the reasons stated above, the Court finds there are genuine issues of material fact regarding whether Defendants committed the state law tort of invasion of privacy.

### E.   Excessive Force Claims

"The use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  *Saucier*, 533 U.S. at 201-02.  In determining the need for force, the court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade

**ORDER DENYING PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT ~ 12**

arrest by flight." *Graham v. Conner,* 490 U.S. 386, 396 (1989). "Reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The reasonableness of the use of force is generally a jury question. *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995). Defendants can prevail on summary judgment, however, if the district court concludes after resolving all facts in favor of the plaintiff, that the officers' use of force was objectively reasonable under the circumstances. *Id.*

Here, there are genuine issues of material fact regarding the amount of force that was used to execute the court pickup order. May Lansden asserts that the officers drew their guns and sprayed her with pepper spray. The officers deny this. As a result, the amount of force used and the reasonableness of the use of force is for the jury to decide. Additionally, by 2004, it was well-established that the Fourth Amendment protects against unreasonable use of force. Thus, summary judgment is not appropriate.

**F.    Personal Participation**

Defendants presented evidence that Defendants McKinley, Rivera, and Kellogg did not enter the residence. Plaintiffs have not refuted this evidence. Liability under section 1983 arises only upon a showing of personal participation by the defendant in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Summary judgment with regard to any claims for individual liability against Defendants McKinley, Rivera, and Kellogg is appropriate.

**G.    Remaining Claims**

The following claims, as well as the claims addressed in Ct. Recs. 87, 107, 164, survive summary judgment and should be resolved by the jury:

**ORDER DENYING PARTIES' MOTIONS FOR
SUMMARY JUDGMENT ~ 13**

   (1)     May Landen's claim for a violation of the Fourth Amendment for warrantless entry and a violation of the knock and announce rule;

   (2)     May Lansden's state law claim for invasion of privacy;

   (3)     May Landen's claim for excessive use of force;

   (4)     Karen Haugen's claim for excessive use of force; and

   (5)     P.L.'s claim for excessive use of force.

**H.    Trial Date**

At the hearing, Plaintiff's counsel notified the Court that he would not be opposed to the trial date being continued. Given that the parties have indicated that it will take more than one week to present the evidence, it is necessary to continue the trial date, due to the Court's unavailability beyond the one week.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff May Lansden's Motion for Partial Summary Judgment (Ct. Rec. 114) is **DENIED**.

2.    Defendants' Motion for Summary Judgment (Ct. Rec. 128) is **DENIED**, except with respect to the claims asserted against Defendants McKinley, Rivera, and Kellogg.

3.    The trial currently set for July 9, 2007, is **continued** to **October 1, 2007**, in Yakima, Washington. If the parties are unavailable for this date, they are directed to consult with each other and inform the Court of an agreed date for the trial, within 10 days from the date of this order.

4.    The telephonic pretrial conference set for June 22, 2007 is stricken. A new telephonic pretrial conference is set for September 14, 2007, at 9:00 a.m. The parties should call the court conference line ((509) 458-6380) at the appropriate time. An order setting forth new trial deadlines will be forthcoming.

///

///

**ORDER DENYING PARTIES' MOTIONS FOR
SUMMARY JUDGMENT ~ 14**

1    **IT IS SO ORDERED.**  The District Court Executive is directed to enter

2    this Order and forward copies to counsel.

3        **DATED** this 23rd day of May, 2007.

4                            *s/ Robert H. Whaley*

5
                            ROBERT H. WHALEY
6                        Chief United States District Judge

7

8

9

10   Q:\CIVIL\2005\Haugen Lansden\deny.sj3.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING PARTIES' MOTIONS FOR
SUMMARY JUDGMENT ~ 15**